**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **TERRY D. BURCH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | )   **Case No.      CIV-06-502-L** |
| **MICHAEL J. ASTRUE,** [1] | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

# FINDINGS & RECOMMENDATION
# OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423 and his application for supplemental security income benefits (SSI) under 42 U.S.C. §1382c(a)(3). This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B), and for the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED for further administrative proceedings**.

## PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on March 25, 2002 and his application for SSI on July 29, 2002 alleging a disability since May 30, 1998 (TR. 119-122, 433-435). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 48, 49, 436, 444).  Pursuant to Plaintiff's request, a hearing *de novo* was held before an ALJ on August 3, 2004 and again on March 7, 2005 (TR. 466-506, 507-565).

---

[1]   On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Therefore, pursuant to Fed. R. Civ. P. 25(d)(1) he should be substituted as defendant in this suit.

The Plaintiff appeared in person and with his attorney and offered his testimony in support of the applications (TR. 5-13, 554-561). A vocational expert (VE) testified at the request of the ALJ (TR. 561-564). Plaintiff's physician, Nancy Didrikson, Ph.D. (clinical psychologist), testified as well as two other medical experts (MEs) called by the ALJ (TR. 478-501, 4-11, 11-15). The ALJ issued his decision on June 24, 2005 finding that Plaintiff was not entitled to DIB or SSI (TR. 15-25). The Appeals Council denied the Plaintiff's request for review on March 10, 2006, and thus, the decision of the ALJ became the final decision of the Commissioner (TR. 6-8).

## STANDARD OF REVIEW

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (*citations omitted*). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*citations omitted*). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (*citations omitted*). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (*citations omitted*). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (*citations omitted*).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (*citations omitted*).

## DISCUSSION & FINDINGS

In addressing the Plaintiff's disability applications the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, so the process continued (TR. 23). At step two, the ALJ concluded that Plaintiff's "hepatitis C and Adjustment

Disorder" were severe impairments (TR. 23).  At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 24). At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work (PRW) (TR. 24).

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The ALJ found that Plaintiff retained the RFC to perform a significant range of light work (TR. 24).  The ALJ used Medical Vocational Rule 202.20 as a framework for decision making and considered the testimony of the VE in determining there were jobs existing in significant numbers in the national economy which Plaintiff could perform (TR. 24). Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB or SSI (TR. 24-25).

On appeal to this Court, Plaintiff alleges that (I) the ALJ erred by disregarding the opinions of his treating physicians, Drs. Thibault, Rae, Johnson, Henry and Didrikson; and (II) that the ALJ's erred at step five in his questioning of the VE.

**Medical Evidence**

In March 2002 Plaintiff's treating physician, Alfred R. Johnson, D.O., diagnosed Plaintiff as having hypersensitivity to chemical fumes and odors and as having environmental illness (TR. 229). Dr. Johnson stated that Plaintiff must "practice strict avoidance as patient is very reactive" (TR. 229).  Dr. Johnson further advised that Plaintiff could not work for six months (TR. 229). In April 2004 Dr. Johnson recommended that Plaintiff avoid chemical exposures (TR. 298).  In August 2004, Dr. Johnson diagnosed Plaintiff with allergic rhinitis, chronic fatigue syndrome, and reactive mental confusion/cognitive dysfunction (TR. 331).  Dr. Johnson also found upon "review of Mr. Burch's past

history, physical exam and circumstances surrounding the onset and persistence of his symptoms it is my medical opinion that he is currently disabled and unable to function both physically and mentally on a consistent basis required in a normal work environment (TR. 331).

In February 2003 Plaintiff's treating physician, Louis Thibault, M.D., diagnosed Plaintiff with allergic rhinitis, food sensitivity and chemical sensitivity (multiple) (TR. 200).  He also provided a secondary diagnosis of hepatitis C, fatigue and arthralgia (TR. 200).

In October 2002 Plaintiff underwent a consultative examination performed by Gloria H. Cha, M.D. (internal medicine), who found that Plaintiff's was alert and oriented with a stable and consistent mood; that motor strength, gait, and coordination were normal (TR. 235).  Dr. Cha also noted that although Plaintiff alleged chemical hypersensitivities, he didn't seem to be hypersensitive to the different chemicals in her medical office (TR. 235).  Plaintiff's physical exam was otherwise grossly normal (TR. 234-235).

For three days in March and April 2004 Plaintiff was examined by his treating physician, Nancy Didriksen, Ph.D. (TR. 321-330).  Her diagnostic impression was of cognitive disorder not otherwise specified; and adjustment disorder with mixed anxiety and depressed mood (TR. 329). She also found that Plaintiff had chemical/environmental sensitivity, chronic fatigue, and chronic pain; that he had extreme reactivity to environmental incitants, social isolation and withdrawal; and that he had a current GAF of 40[2] (TR. 329).  In July 2004 Dr. Didriksen opined that "Mr. Burch's lack of emotional stability and compromised emotional equilibrium also argue strongly against

---

[2]    A GAF represents Axis V of the Multiaxial Assessment system.  A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed. 1994), p. 30. The GAF score is taken from the GAF scale which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 32. The GAF scale defines the range from 31 to 40 as follows: Some impairment in reality testing or communication; Major impairment in several areas such as work, school, family relationships.

return to work at this time.  It is doubtful that he is able to adequately cope with any type of workplace stress" (TR. 342).

In May 2004, Dr. Didriksen completed a medical source statement in which she concluded that Plaintiff had only a "fair" ability to follow work rules and understand, remember and carry out simple instructions; that he had between a "fair" and "poor to none" ability in the following areas: Relate to co-workers; interact with supervisors; deal with work stresses; maintain attention and concentration; and understand, remember and carry out detailed but not complex job instructions (TR. 317-318). Dr. Didriksen also found that Plaintiff had severely impaired "new learning and problem solving, abstract reasoning, mental efficiency, even in a safe environment" (TR. 318).  She further found that Plaintiff had a "poor to none" ability to maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability (TR. 318).  Dr. Didriksen further opined that Plaintiff's personal/social judgments "would likely be greatly exacerbated by reactions to environmental irritants"; and that as to work related activities: Plaintiff "cannot sustain any type of work in an environment which is toxic to him. Even in this examiner's relatively safe environment, he reported severe symptomatology after one hour" (TR. 318).  Dr. Didriksen also found that Plaintiff's limitations lasted or could be expected to last for twelve months or longer (TR. 319).

Also in May 2004, Plaintiff's treating physician, William J. Rea, M.D. (surgeon), found that Plaintiff had recently suffered from an acute exacerbation of his symptoms which rendered him unable to attend his college classes and complete the semester (TR. 385).

In July 2004, Plaintiff's treating physician, Katherine S. Henry, M.D. (family practice), concluded that Plaintiff was unable to function consistently on a day to day basis at any task; and that he required several hours of rest during the course of a work day (TR. 332-333).

In February 2005, Plaintiff was examined by Scott J. Zashin, M.D. (rheumatology), who assessed him as having chronic hepatitis C virus with musculoskeletal complaints including

tendonitis and joint pain which are likely secondary to hepatitis C (TR. 423). Dr. Zashin encouraged Plaintiff to see a "mental health professional to help him deal with his chronic illness, environmental allergies and also his isolation due to the fact that he cannot work because of pain in his joints" (TR. 423).

### Hearing Testimony

Dr. John Vorhies (ME) testified based upon his review of Plaintiff's medical records that Plaintiff's physicians diagnosed him with "multiple chemical sensitivities" which is a disorder that is not recognized by the "mainstream medical community" (TR. 511). He further testified that fatigue and mental confusion are symptoms of the condition; and that there is no effective treatment for the condition (TR. 514). Dr. Alvin Smith (ME) testified at the hearing that based upon his review of the medical record, that Plaintiff could not perform complex tasks; and that he had an adjustment disorder (TR. 522, 519).

Plaintiff testified that he experienced the following symptoms which prevented him from performing any type of full-time work: Disorientation, confusion, irritability, and depression (TR. 539). He also described headaches, a dry irritated throat, and aching joints (TR. 541). He also described episodes of fatigue which required him to take a one to two hour nap every day before noon (TR. 541-542).

## I.

Plaintiff argues that the ALJ erred by disregarding the opinions of his treating physicians, Drs. Thibault, Rae, Johnson, Henry and Didriksen (See Plaintiff's Brief at pages 5-9). A treating physician's opinion is entitled to great weight. *Williams v, Bowen*, 844 F.2d 748, 757-58 (10th Cir. 1988) (more weight will be given to evidence from a treating physician than to evidence from a consulting physician appointed by the Secretary or a physician who merely reviews medical records without examining the claimant); *Turner v. Heckler*, 754 F.2d 326, 329 (10th Cir. 1985). However, a treating physician's opinion may be rejected "if it is brief, conclusory, and unsupported by medical

evidence." *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).   If an ALJ disregards a treating physician's opinion, he must set forth "specific, legitimate reasons" for doing so.   *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).   As to the opinions of Drs. Johnson, and Henry the ALJ provided a thorough discussion and adequate reasoning for rejecting those opinions (TR. 17).   As to the opinions of Drs. Thibault and Rae the Plaintiff fails to specify what, if any, opinions of these physicians were not properly considered.

As to the opinions and testimony of Dr. Didriksen the ALJ's analysis is sorely lacking (TR. 20). The ALJ rejected all of her opinions without adequate explanation.  The only reasoning given by the ALJ was that "her testimony was based on a valid environmental illness basis" and was "therefore found invalid"; and further that such diagnosis was not an accepted diagnosis "per Dr. Vorhies in the medical community" (TR. 20) The ALJ further reasoned that Dr. Didriksen "only saw the Plaintiff on a limited basis and was unfamiliar with his education, part time work and social activities" (TR. 20).   The ALJ relies heavily on the testimony of two MEs who never examined Plaintiff (TR. 19, 20).   Despite the lack of recognition in the mainstream medical community for the diagnosis of environmental illness, Dr. Didriksen's extensive testing and the conclusions derived therefrom were not based solely on the environmental illness diagnosis, and thus merit more discussion by the ALJ.  On remand the ALJ should thoroughly discuss his reasoning for rejecting the opinions of Dr. Didriksen and should obtain a consultative psychological examination.

The ALJ's failure to thoroughly discuss why he rejected the opinions of Dr. Didriksen violates the standards established by *Byron* and its progeny.

Thus, remand is appropriate since the ALJ disregarded the opinion of Plaintiff's treating physician, without offering specific, legitimate reasons for doing so.

## II.

The ALJ's failure to discuss why he rejected the opinions of Dr. Didriksen and his failure to obtain a consultative psychological exam served to taint step five of the sequential evaluation process.  Thus, Plaintiff's remaining assertion of error will not be discussed.

### RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is not supported by substantial evidence and should be **REVERSED AND REMANDED for further administrative proceedings**. The parties are advised of their right to object to these findings and recommendation within twenty (20) days of the date of the filing hereof, in accordance with 28 U.S.C. §636 and Local Court Rule 72.1 (a). The parties are further advised that failure to make timely objection to these findings and recommendation waives their right to appeal from a judgment of the district court based upon these findings and recommendation. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

The foregoing Findings and Recommendation disposes of all issues referred to the undersigned magistrate judge in the above captioned matter.

ENTERED this the 16th day of April, 2007.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE